UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

KOBA LIMITED PARTNERSHIP,                              Case No. 18-11104-t7

   Debtor.

## OPINION

Before the Court is the final fee application of Debtor's former chapter 11 counsel. Debtor's owner objected to the application, alleging a number of serious problems with the conduct of the counsel. After a final hearing on the application and the objection, the Court finds and concludes that the application should be granted for the most part.

### I. FACTS

The Court finds:[1]

For more than 20 years, Debtor owned and operated the Kachina Lodge hotel in Taos, New Mexico.[2] During that time, Debtor was owned and operated by Wilmer and Sally Koop.

The hotel apparently became less profitable over time and may have suffered from the very bad snow season in 2017-2018. On December 4, 2017, Debtor's secured lender filed a collection and foreclosure action in state court.

On February 5, 2018, the Debtor entered into an agreement to sell the hotel to the Taos Pueblo for $3,000,000. Mr. Koop signed the purchase contract on behalf of the Debtor. The agreement provided for a due diligence period.

---

[1] The Court took judicial notice of the docket in the main case and all adversary proceedings. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).
[2] The hotel is an older property. Portions of the hotel property were built between 1960 and 1975.

Meanwhile, the secured lender filed a motion in the foreclosure action to appoint a receiver. The state court scheduled a hearing on the motion on May 2, 2018.

On or about April 28, 2018, Debtor was notified that the Taos Pueblo was not willing to close the purchase transaction at $3,000,000 because of the condition of the hotel. No specific lower amount was offered, but the reduced price mentioned to Debtor's state court counsel was "significantly less than $2,000,000." Debtor rejected such a low price but offered to reduce the purchase price to $2,750,000.

Debtor filed this chapter 11 case on the morning of May 2, 2018, shortly before the receiver hearing. That afternoon, the Taos Pueblo sent an email purporting to accept the reduced price of $2,750,000.

Debtor retained Giddens & Gatton Law, P.C. ("Counsel") to file the chapter 11 case. Debtor had not planned on filing for bankruptcy protection and consequently Counsel had to scramble to get the case on file before the receiver hearing.

Counsel timely filed its employment application and the related disclosures. The Court approved the employment application on June 14, 2018.

On June 8, 2018, Debtor applied to employ a real estate broker. A listing agreement signed by Mr. Koop was attached to the application. The Court granted the application on July 11, 2018.

On September 24, 2018, Debtor filed a motion to sell the hotel free and clear of liens to M&M Partnership for $3,200,000. Attached to the motion is a purchase contract signed by Mr. Koop. The motion was approved on October 30, 2018.

Counsel filed its first fee application on October 31, 2018, seeking interim approval of $118,698 in fees and $6,069 in expenses. No objections were filed, and the Court granted the application on November 28, 2019.

The proposed sale to M&M closed on January 2, 2019. After closing costs and payments to secured creditors, the Debtor realized $247,764.76, which was held by Counsel in a separate interest-bearing account. Debtor filed a report of sale on February 13, 2019.

Counsel filed a final fee application on March 1, 2019 (the "Application"), which was followed four days later by a motion to withdraw as Debtor's counsel.

On March 13, 2019, the U.S. Trustee's office filed a motion to convert the case to chapter 7, arguing that after the hotel sale there was no reason to continue in chapter 11.

On April 25, 2019, the Court granted both the motion to convert and Counsel's motion to withdraw.

The Application seeks allowance of $91,505.39 (plus an additional $2,551.25 to prepare the Application) for work done from October 1, 2018 through February 20, 2019. The Application also seeks final approval of the fees and expenses approved on an interim basis with the first application. The grand total of amounts for which final approval is sought is $218,824.38.

Mr. Koop was the only party who objected to the Application. At the July 18, 2019, final hearing, Mr. Koop argued primarily that:

- While the cash collateral budgets had a monthly line item for counsel fees of $7,500, the actual fees charged by Counsel greatly exceeded that amount;

- Counsel did not promptly file a motion to pay certain "critical vendors," namely travel agents Booking.com and Expedia, that, pre-petition, generated a lot of business for the Debtor;

- While Counsel was working on a sale of the hotel, it was leading the Debtor's owner to believe that a reorganization was possible; and

- The work done by Counsel on the sale to M&M was unnecessary because

it could have been done by the estate's broker.

Attorney Paul Fish testified at the final hearing in support of the Application. Mr. Fish, qualified as an expert witness, opined that the fees charged by Counsel were high for a case the size of the Debtor's, but that there were adequate reasons for the high fees. Essentially, Mr. Fish testified that the high cost was due to problems caused by Mr. Koop. Mr. Fish gave a number of examples. For the cash collateral orders, the lender insisted on hearing Mr. Koop admit under oath that he was bound by a cash collateral order. Because of unspecified pre-petition actions, Mr. Koop's lender did not trust him. The lack of trust resulted in more time being spent going into routine document preparation. Mr. Fish also outlined the issues the case had regarding insurance. Debtor's attorneys had to spend a great deal of time trying to find insurance because Mr. Koop failed to do so. Insurance should have been a management issue, not a lawyer issue. Due to Mr. Koop's failure to act, it was necessary for his lawyers to search for and purchase insurance on his behalf.

Mr. Fish testified that additional challenges included first day motions regarding utility services (e.g. the electric utility wanted drop dead provisions given the history of pre-petition payments); several expedited motions to evict tenants shortly before closing of the sale to M&M;[3] and Mr. Koop's interference during the closing process. At closing, net proceeds went into a trust account pursuant to a court order. Mr. Koop went to the title company to try to retrieve part of these funds to repay personal loans made to the Debtor. Mr. Fish opined that the result of these problems was higher expense to the estate and that Mr. Koop was the primary cause of most of them.

The Court finds that Mr. Fish's opinions were credible and persuasive. The Court adopts

---

[3] Before the sale, the Debtor had picked up several long-term renters/tenants. M&M did not want to assume the leases.

the examples listed above as findings.

After Debtor filed bankruptcy, Booking.com and Expedia delisted the hotel from their and their affiliated websites, causing a drop in revenue from bookings. The Debtor listed both creditors in its schedules but did not express the importance of the creditors to Counsel. When Mr. Koop finally raised the point, Counsel quickly moved to pay Booking.com as a critical vendor. Counsel was never able to file a motion regarding Expedia because Mr. Koop did not give Counsel the necessary documents. Mr. Koop had the duty to inform Counsel, pre-petition, that the hotel could not afford to lose the services of the travel agents. There is no evidence he did so.

## II. DISCUSSION

A. General Requirements for Professional Fee Allowance.

Allowance of professional fees payable by a chapter 11 estate is governed by § 330(a),[4] the initial portion of which states, in part:

> (1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a…professional person employed under section 327 or 1103—
>     (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>     (B) reimbursement for actual, necessary expenses.

The Court may also award less compensation than is requested. § 330(a)(2). Bankruptcy courts have broken down the elements of § 330(a) as follows:

> To be compensable, the fees must be for services that were "actual" and "necessary." § 330(a)(1)(A). If the applicant clears these hurdles, then the fees must be "reasonable." *Id. See also In re Lederman Enterprises, Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993); *In re Commercial Financial Services, Inc.*, 427 F.3d 804, 811 (10th Cir. 2005).

*In re Railyard Company, LLC*, 2017 WL 3017092, at *3 (Bankr. D.N.M.).

---

[4] All statutory references are to 11 U.S.C. unless otherwise noted.

B.  Actual Services.

Compensation can only be allowed for "actual" services performed. *See, e.g., In re Orthopaedic Technology, Inc.*, 97 B.R. 596, 600–01 (Bankr. D. Colo. 1989) ("The Code requires that the services actually be performed before the compensation is awarded. Therefore, work to be performed does not qualify for actual services rendered"). It is unusual for a question to arise regarding whether services billed for were actually performed, and Mr. Koop did not object on that ground.

C.  Necessary Services.

Necessity is a question of "whether the services were necessary to the administration of, or beneficial toward the completion of a case." *In re Schupbach Investments, LLC*, 2014 WL 6680122, at *8 (10th Cir. BAP); *In re Hungry Horse, LLC*, 2017 WL 3638182, at *3 (Bankr. D.N.M.) (same).

Reviewing the docket in this case and Counsel's fee bills, the Court concludes that, with one exception, the services rendered by Counsel to the estate were necessary. Counsel prepared and amended Debtor's bankruptcy schedules; employed professionals; obtained permission to use cash collateral; dealt with utility deposits; filed operating reports; obtained critical insurance for the Debtor; worked with the U.S. Trustee's office; negotiated with the secured lender; worked diligently on the sale of the hotel; got the sale closed despite substantial interference from Mr. Koop; and rendered numerous other services needed to achieve a fairly good result for this difficult case. That Mr. Koop became (extremely) disenchanted with Counsel is unfortunate, but the Court's overall impression is that Counsel did a good job in this case under trying circumstances.

The one area where the Court questions the necessity of the services is in drafting and pursuing confirmation of a plan and disclosure statement.[5] Despite Mr. Koop's late protests to the contrary, a sale of the hotel was always the most likely resolution of this bankruptcy case, and probably the only possible resolution. Given that, it is not clear to the Court that it was necessary to obtain confirmation of a plan of liquidation. It is far cheaper and faster to sell the estate's assets and then convert the case to chapter 7, which ultimately was done. $11,049.50 was billed for work on a plan and disclosure statement. The Court concludes that the work was not necessary.

D.  Reasonable Compensation.

In the Tenth Circuit, bankruptcy courts ruling on the reasonableness of professional fees must weigh a combination of six factors set out in § 330(a)(3) and twelve factors from *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974). *See In re Market Center East Retail Property, Inc.*, 730 F.3d 1239, 1247 (10th Cir. 2013). Under § 330(a)(3) the Court must consider:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

The *"Johnson"* factors are:

> (1) The time and labor required;

---

[5] Counsel sought, and was granted, an extension of time to file a plan. Debtor filed its proposed plan on December 27, 2018, shortly after the Court entered an amended order approving the sale to M&M, and six days before the sale closed.

(2) The novelty and difficulty of the questions;
(3) The skill requisite to perform the legal service properly;
(4) The preclusion of other employment by the attorney due to acceptance of the case;
(5) The customary fee;
(6) Whether the fee is fixed or contingent;
(7) Time limitations imposed by the client or the circumstances;
(8) The amount involved and the results obtained;
(9) The experience, reputation, and ability of the attorneys;
(10) The "undesirability" of the case;
(11) The nature and length of the professional relationship with the client; and
(12) Awards in similar cases.

The Court weighs the § 330(a)(3) and *Johnson* factors as follows:

| Factor | Discussion |
| --- | --- |
| § 330(a)(3)(A): Time spent | As Mr. Fish noted, more time was spent on troubleshooting various issues than in a typical chapter 11 case. However, the additional time is attributable to Mr. Koop, not Counsel. Favors a reasonableness finding. |
| § 330(a)(3)(B): Rates charged | Four attorneys and two legal assistants from Counsel's office worked on the case. The hourly rates varied from $100 per hour (legal assistants) to $350 per hour (Dave Giddens). The various hourly rates are reasonable for professionals with their experience. Favors a reasonableness finding. |
| § 330(a)(3)(C): Necessary/beneficial | Except as noted above, the services were necessary and beneficial to the estate. Favors a reasonableness finding. |
| § 330(a)(3)(D): Timeliness | The services were performed timely. Any alleged untimeliness (i.e. the "critical vendor" issue) was a result of Mr. Koop's inactions. Favors a reasonableness finding. |
| § 330(a)(3)(E): Skill/experience | Counsel is an experienced bankruptcy firm, with lawyers who have more than enough knowledge, skill, and experience to represent debtors in chapter 11 cases of this size and complexity. Favors a reasonableness finding. |
| § 330(a)(3)(F): Customary compensation in non-bankruptcy cases | The hourly rates charged by Counsel in this case are consistent with compensation charged in non-bankruptcy cases. Favors a reasonableness finding. |
| *Johnson* factor ("JF") 1: Time and labor required? | The time spent was reasonable considering the difficulty Counsel experienced working with Debtor's principals and representatives. Favors a reasonableness finding. |
| JF 2: Novelty and difficulty of the questions? | There do not appear to have been any novel or difficult legal questions in this case. Does not favor a reasonableness finding. |
| JF 3: Skill requisite to perform the legal service properly? | Counsel had the skill requisite to perform all needed legal services. Favors a reasonableness finding. |

| | |
|---|---|
| JF 4: Preclusion of other employment due to acceptance of the case? | Representing Debtor in this chapter 11 case reduced Counsel's ability to work on other paying matters. Favors a reasonableness finding. |
| JF 5: Customary fee? | The fees charged by Counsel were at their customary rates. Favors a reasonableness finding. |
| JF 6: Whether the fee is fixed or contingent? | The hourly rates charged by the firm were fixed. Favors a reasonableness finding. |
| JF 7: Time limitations imposed by the client or circumstances? | Counsel acted quickly to file the case before the state court receivership hearing. Counsel also moved quickly to file a critical vendor motion for Booking.com once Mr. Koop alerted Counsel to the need for immediate relief. Counsel acted timely in all instances. Favors a reasonableness finding. |
| JF 8: Amount involved and results obtained? | The $3,200,000 sales price for the hotel appears to have been a good result, especially considering that the price offered to the Taos Pueblo pre-petition was $2,750,000. All things considered, the result obtained by Counsel was favorable. Favors a reasonableness finding. |
| JF 9: Experience, reputation, and ability of the attorneys? | Counsel and its bankruptcy attorneys are experienced and have good reputations. Favors a reasonableness finding. |
| JF 10: Undesirability of the case? | This case, in retrospect, was undesirable, as shown in part by the scurrilous allegations Mr. Koop has made about counsel in publicly filed documents. Favors a reasonableness finding. |
| JF 11: Nature and length of professional relationship with the client? | Not applicable. |
| JF 12: Awards in similar cases? | The amount requested is higher than might be expected in comparable cases. However, as explained elsewhere, the discrepancy can reasonably be attributed to Mr. Koop. Favors a reasonableness finding. |

The factors weigh heavily in favor of finding that the fees charged were reasonable.

E.  Mr. Koop's Arguments. To the extent they are not dealt with above, the Court evaluates Mr. Koop's arguments.

1. Fees greatly exceeded cash collateral budget. The problem with this argument is that the cash collateral budget bears only remotely on the reasonableness of professional fees. It is always good when professional fees do not exceed a cash collateral budget line item. That is an infrequent occurrence, in the Court's experience. Sometimes the budget

amount is based on estimated work to be done; often it is based on what the debtor can afford. In no event does an overrun mean that fees are unreasonable.

It is very difficult to know what will happen in a chapter 11 case and how much attorney work will be involved. This case is a good example. Counsel had little way of knowing that its work would be made more difficult by Mr. Koop. Further, it seems clear that the Debtor could ill afford to pay Counsel more than $7,500 a month. It seems reasonable to budget the fees at a low monthly level and pay the accrued balance when the hotel was sold. This was risky for Counsel but benefitted the estate.

2. <u>Failure to file a prompt "critical vendor" motion</u>. The relevant facts are set out above. The Court concludes that any inaction regarding Booking.com or Expedia was caused by Mr. Koop. It was incumbent on him to let Counsel know, pre-petition, that the hotel could not afford to lose the services of the travel agents. There is no evidence that Mr. Koop did so, nor that he timely gave Counsel the necessary documents and information to get the critical vendor motion on file.

3. <u>While the firm was working on a hotel sale, it was leading the Debtor's owner to believe that a reorganization was possible</u>. Mr. Koop suggests that when he hired Counsel, he wanted to reorganize the Debtor. Therefore, Counsel's efforts to sell the hotel were unwarranted and unauthorized. The argument fails. Pre-petition, Mr. Koop signed an agreement to sell the hotel to the Taos Pueblo. Shortly after the case was filed, Mr. Koop signed a listing agreement with the broker retained by the estate. About three and a half months later, Mr. Koop signed the sale agreement with M&M. Plainly, Mr. Koop was aware at all times that the hotel was to be sold; he was directly involved in, and had approved, every step of the sales process.

4. <u>The work done by Counsel on the sale was not necessary</u>. Finally, Mr. Koop

complains that Counsel should not have spent so much time on the sales contract with M&M and the closing because the estate's real estate broker could have done the work as part of its commission. The argument has no merit. Brokers are not lawyers. M&M was represented by well-known, highly regarded real estate attorneys; the estate needed good legal representation to negotiate the contract, review closing documents, deal with issues that always arise in the due diligence process, draft the sales motion and order, and attend to the closing. Far from being unnecessary, it probably would have been a dereliction of duty to allow the seller's interests to be handled solely by a broker.

### III. CONCLUSION

Except for the work done on the plan of liquidation and disclosure statement, the Court finds and concludes that Counsel's services rendered to the estate in this case were actual and necessary, and that the fees charged for those services were reasonable. The Court will enter a separate order granting the Application consistent with this opinion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: September 30, 2019
Copies to: electronic notice recipients

Wilmer Dean Koop
P.O. Box 2480
Taos, NM 87571-2480

-11-
Case 18-11104-t7    Doc 215    Filed 09/30/19    Entered 09/30/19 16:29:13 Page 11 of 11